No. 14-40114

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## WELLS FARGO BANK, N.A.,

### Defendant – Appellant

### v.

## DAVID MCCAIG, Individually and as the Representative of the
## Estate of Allie Vida McCaig; MARILYN MCCAIG

### Plaintiffs – Appellees

_____

### On Appeal from the United States District Court
### For the Southern District of Texas, Corpus Christi Division
### USDC No. 2:11-CV-351

_____

## APPELLANT'S REPLY BRIEF

_____

W. Scott Hastings
Kurt M. Wolber
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 (fax)

*Counsel for Appellant*

# TABLE OF CONTENTS

A.  INTRODUCTION ...................................................................................... 1

B.  THE MCCAIGS MOSTLY IGNORE THE ELEMENTS OF THEIR
    CLAIMS UNDER QUESTION 4 .................................................................. 2

    1.  Wells Fargo Is Not Liable Under Question 4(1)........................ 3

    2.  Wells Fargo Is Not Liable Under Question 4(2)........................ 4

    3.  Wells Fargo Is Not Liable Under Question 4(3)........................ 8

    4.  The McCaigs' Claims Are Barred by the Economic Loss
        Rule.......................................................................................... 9

C.  THE MCCAIGS LACK STANDING TO SUE UNDER THE TDCA ............... 11

D.  THE AWARD OF MENTAL ANGUISH DAMAGES SHOULD BE
    REVERSED........................................................................................... 13

E.  WELLS FARGO IS NOT LIABLE UNDER QUESTION 6 ............................ 15

F.  THE AMOUNT OF DAMAGES AWARDED WAS EXCESSIVE .................... 16

G.  THE MCCAIGS CANNOT RECOVER FOR BREACH OF CONTRACT .......... 16

H.  CONCLUSION...................................................................................... 19

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Ashford Dev., Inc. v. USLife Real Estate Servs.*,
661 S.W.2d 933 (Tex. 1983) ...............................................................................9

*Ashford Partners Ltd. v. ECO Resources, Inc.*,
401 S.W.3d 35 (Tex. 2012)................................................................................19

*Bunton v. Bently*,
153 S.W.3d 50 (Tex. 2004)................................................................................17

*Crawford v. Ace Sign, Inc.*,
917 S.W.2d 12 (Tex. 1996)..................................................................................9

*Dixon v. International Harvester Co.*,
754 F.2d 573 (5th Cir. 1985) ............................................................................17

*Doe v. SmithKline Beechum Corp.*,
855 S.W.2d 248 (Tex. App.—Austin 1993),
*aff'd*, 903 S.W.2d 347 (Tex. 1995)....................................................................19

*Eiland v. Westinghouse Elec. Corp.*,
58 F.3d 176 (5th Cir. 1995) ..............................................................................17

*First Valley Bank of Los Fresnos v. Martin*,
55 S.W.3d 172 (Tex. App.—Corpus Christi 2001),
*rev'd,* 144 S.W.3d 466 (Tex. 2004)...................................................................17

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
960 S.W.2d 41 (Tex. 1998)................................................................................10

*Fowler v. Lund*,
2012 WL 8017138 (Tex. App.—Houston [14th Dist.] 2012, no pet.) .................2

*Lee v. Wells Fargo Bank, N.A.*,
2013 WL 754043 (S.D. Tex. Feb. 27, 2012) .....................................................11

*Munn v. Algee*,
924 F.2d 568 (5th Cir. 1991) ............................................................................17

*Petersen v. Black*,
    980 S.W.2d 818 (Tex. App.—San Antonio 1998, no pet.) ...............................16

*SCS Builders, Inc. v. Searcy*,
    390 S.W.3d 534 (Tex. App.—Eastland 2012, no pet.)........................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................................11

## CONSTITUTION AND STATUTES

TEX. FIN. CODE §392.001(1) ...............................................................................12

TEX. FIN. CODE §392.001(2) ...............................................................................12

TEX. FIN. CODE §392.301(a)(7)..............................................................................3

TEX. FIN. CODE §392.301(a)(8)..............................................................................3

TEX. FIN. CODE §392.303(a)(2)..........................................................................4, 5

TEX. FIN. CODE §392.301(a)(3)............................................................................16

TEX. FIN. CODE §392.301(b)(3) ...........................................................................16

TEX. FIN. CODE §392.304(a)(8)..............................................................................8

TEX. FIN. CODE §392.304(a)(12)............................................................................8

TEX. PROP. CODE §51.002(b) ..............................................................................13

## A.  INTRODUCTION

This case is about a contract—the Forbearance Agreement.  Wells Fargo waived the fees it promised to waive, it brought Allie Vida McCaig's ("Allie") loan current, and it did not foreclose.[1]  Because of the unique nature of the Forbearance Agreement, Wells Fargo made a mistake and erroneously concluded that the McCaigs were not in compliance with the agreement.  Although David and Marilyn McCaig (the "McCaigs") may have been frustrated by that, Wells Fargo corrected the mistakes it made and halted the foreclosure process six months before this lawsuit was filed.  The Texas Debt Collection Act ("TDCA") does not create liability against a party simply because it made mistakes under a contract.

Although Appellees dismiss Wells Fargo's arguments as "legalese and semantic distinctions" (*see* Appellees' Brief at 4), Wells Fargo is actually asking this Court to analyze the evidence produced at trial to see whether it is sufficient to prove the elements of the causes of action asserted.  The evidence falls short.

---

[1]  The McCaigs are wrong when they argue:  "in December 2010, Wells Fargo foreclosed on the property." (Appellees' Brief at 9).  Wells Fargo stopped the foreclosure process before the property was foreclosed upon and sold.  The McCaigs never lost their right to possession and control of the property.  Texas law has never recognized a cause of action for a wrongful attempt to foreclose (*i.e.* a mistaken initiation of the foreclosure process).  (*See* Appellant's Brief at 17-18).  Therefore, the initiation of the foreclosure process cannot be the same as being "foreclosed" (as the McCaigs' suggest).

In its opening brief, Wells Fargo explained the correct standards applicable to this appeal. When the evidence is reviewed under the correct standard, the Court should find that there is no evidence to support the jury's verdict under the TDCA. There is also no evidence to support the award of damages to the McCaigs. For the most part, the McCaigs ignore the legal and factual problems with their claims. For example, the McCaigs' brief fails to address the specific elements of any of their TDCA claims. And, it presents arguments directly contrary to the terms of the Forbearance Agreement. In this Reply, Wells Fargo will address the fundamental errors in the McCaigs' brief.

## B.     THE MCCAIGS MOSTLY IGNORE THE ELEMENTS OF THEIR CLAIMS UNDER QUESTION 4

Because the district court submitted multiple claims to the jury under a single question, reversal is required if *any* of the submitted claims fails as a matter of law. (*See* Appellant's Brief at 20-22). The McCaigs "disagree with Wells Fargo's contention" on this standard of review (*see* Appellees' Brief at 8), but cite no authority that supports their contrary position. Instead, the McCaigs rely on an unpublished state court of appeals' decision that does not address this issue, and does not even involved an appeal from a jury verdict. (*See* Appellees' Brief at 9 (citing *Fowler v. Lund*, 2012 WL 8017138 (Tex. App.—Houston [14th Dist.] 2012,

no pet.)).   When the specific TDCA claims submitted under Question 4 are analyzed, the Court should conclude they *all* fail as a matter of law.

### 1.   *Wells Fargo Is Not Liable Under Question 4(1)*

The McCaigs ignore most of Wells Fargo's arguments demonstrating why the McCaigs had no viable claims under TEX. FIN. CODE §§392.301(a)(7) & (8). (*See* Appellant's Brief at 26-29).   The McCaigs do not address (or even cite) Section 392.301(a)(7), which was the statutory basis for the claim submitted under Question 4(1)(a).   They ignore the statutory safe harbor created under Section 392.301(b)(3), which applied to the theories submitted under Questions 4(1)(a) and 4(1)(b), and fail to address the error that occurred when the jury deliberated using the wrong charge—the one omitting the safe harbor.

The McCaigs' only argument to defend their claim under TEX. FIN. CODE §392.301(a)(8), which was submitted under Question 4(1)(b), is to say that Wells Fargo threatened to take an action prohibited by law when it threatened to foreclose despite having entered into the Forbearance Agreement.   The McCaigs ignored the authority holding that a threat to foreclose in accordance with Texas law is *not* a threat to take an action prohibited by law.   (*See* Appellant's Brief at 27).   The McCaigs did not address Wells Fargo's statutory construction arguments explaining why Section 392.301(a)(8) cannot be read to penalize a mere breach of

3

contract.  (*See* Appellant's Brief at 27-28).  Instead, it appears that the McCaigs want to use the TDCA to create a claim for an attempted wrongful foreclosure (*i.e.* a foreclosure precluded by contract) that has never been recognized under Texas law.  (*See* Appellees' Brief at 9).  The McCaigs offer no explanation why such a claim should be found buried in the TDCA when it has been expressly rejected under so many other labels.  (*See* Appellees' Brief at 9)

### 2.    *Wells Fargo Is Not Liable Under Question 4(2)*

The McCaigs also failed to identify any evidence to support a viable claim under TEX. FIN. CODE §392.303(a)(2)—the claim submitted under Question 4(2). Section 392.303(a)(2) required proof of two connected elements:  (1) the use of "unfair or unconscionable means" (2) "to collect or attempt to collect interest or a charge, fee, or expense incidental to the obligation" that is not permitted.  *See* TEX. FIN. CODE §392.303(a)(2).  The McCaigs offer only a disjointed discussion arguing that Wells Fargo acted unfairly and unconscionably (*see* Appellees' Brief at 10-13) and that Wells Fargo attempted to charge fees that were prohibited by the Forbearance Agreement (*see* Appellees' Brief at 14-15).  But, the McCaigs fail to connect these two elements to support a viable claim under Section 392.303(a)(2), and their disconnected arguments are unsupported by the evidence.

4

Mere mistakes in performance under a non-standard contract do not make Wells Fargo's actions "unfair or unconscionable."  Regardless, the TDCA does not create a general claim penalizing allegedly unfair or unconscionable performance under a contract.    Instead, the TDCA requires the allegedly unfair or unconscionable behavior to be tied to an attempt to collect unauthorized interests or fees from a consumer.  *See* TEX. FIN. CODE §392.303(a)(2).  The evidence is undisputed that Wells Fargo never attempted to collect any prohibited fees or payments from the McCaigs.  ROA.5335, ROA.5341, ROA5405-ROA.5406.

In their attempt to prove improper charges by Wells Fargo, the McCaigs ignore the difference in Wells Fargo's relationship with Allie Vida McCaig under her Note and Deed of Trust (DX1 & DX2) and Wells Fargo's relationship with the McCaigs under the Forbearance Agreement (PX1 & PX2).  These are not the same.  Although the McCaigs may have "felt" they were obligated to pay under the Note and Deed of Trust (*see* Appellees' Brief at 12), the Forbearance Agreement states to the contrary:  "the parties acknowledge and agree that the McCaigs are not obligors on the Note, and the McCaigs are not personally liable for the Loan Agreement Debt." (PX1-3).

The McCaigs complain about receiving monthly statements on Allie's loan that did not reflect the terms of the Forbearance Agreement.  (*See, e.g.,* Appellees'

Brief at 13-14). They also complained that Wells Fargo "kept two sets of books" on Allie's loan. (*See, e.g.,* Appellees' Brief at 5, 11). The fact is Wells Fargo had a legal obligation to provide monthly statements on Allie's loan, and under the terms of the Forbearance Agreement, her loan remained in default unless and until the McCaigs *completed* performance under the Forbearance Agreement.[2] (PX1-5; PX2-1). The McCaigs filed this lawsuit before they completed the plan. Wells Fargo had to track two scenarios in its accounting—the history of performance under Allie's loan and the result that would occur if and when the McCaigs completed the Forbearance Agreement.

By ignoring the difference between Allie's loan and the Forbearance Agreement, the McCaigs also reached the incorrect conclusion that "Wells Fargo added fees and charges that could not be assessed, and attempted to collect them." (Appellees' Brief at 14).[3] The McCaigs argued this point to the jury too. Under

---

[2]  On page 9, the McCaigs cite testimony from one of their experts to argue "the loan was not in 'default' so long as the agreement was being complied with." (Appellees' Brief at 11). The Forbearance Agreement expressly provides to the contrary. Under the Forbearance Agreement, Allie Vida's "Loan remains in default" unless and until the payment plan was completed. (PX1-5; see also PX2-1 ("the Loan remains in Default")). The McCaigs cannot rewrite the terms of the Forbearance Agreement on appeal.

[3]  On page 15, the McCaigs write "[t]here is no dispute that Wells Fargo added unauthorized charges to the loan while the forbearance agreement was being complied with by the McCaigs. (ROA.5553)." Contrary to the McCaigs statement, the witness did not testify that there were any "unauthorized" charges. (*See* ROA.5553). On the next page, the witness

6

the Forbearance Agreement, however, Wells Fargo only conditionally agreed to waive fees and charges *if* the McCaigs completed performance under the Forbearance Agreement. (PX1-4-5).[4] The Forbearance Agreement even recognized the possibility of "additional fees and costs that may accrue to the Loan subsequent to this Agreement." (PX1-5). The McCaigs offered no evidence of any improper fees actually charged to or collected from the McCaigs. It is also undisputed that the fees and charges that accrued to Allie's loan after the Forbearance Agreement were waived by Wells Fargo upon the McCaigs' completion of the Forbearance Agreement. Accordingly, although the McCaigs may argue that Wells Fargo's position "was not persuasive to the jury" (*see* Appellees' Brief at 15), the truth is the McCaigs' arguments (and the jury's verdict) with respect to allegedly improper fees are directly contrary to the undisputed evidence.

---

testified that any charges assessed against Allie's loan were reversed when the forbearance plan was completed. (ROA.5554).

[4] The McCaigs are also wrong when they claim: "[t]he purpose of assessing those charges was to collect them." (*See* Appellees' Brief at 15) (citing ROA.5560). The witness actually testified the fees were assessed so they could be collected "if there was a default on the forbearance agreement." ROA.5560. The witness further testified these fees would not be collected "if they complete the plan." ROA.5560.

### *3.     Wells Fargo Is Not Liable Under Question 4(3)*

The McCaigs also failed to identify evidence sufficient to prove viable claims under TEX. FIN. CODE §§392.304(a)(8) & 392.304(a)(12)—the claims submitted under Questions 4(3)(a) and 4(3)(b).  The McCaigs offered no evidence to prove Wells Fargo acted with the intent needed to violate these provisions.

Even if they could show that Wells Fargo misrepresented the "character, extent and amount of the debt," as required for a violation of Section 392.304(a)(8), their claim failed because there was no evidence Wells Fargo intended to defraud, mislead, or deceive the McCaigs by making the statements. To the contrary, the evidence established that Wells Fargo worked with the McCaigs by entering into a Forbearance Agreement that allowed the McCaigs to avoid foreclosure on the property.  Then, when mistakes were made, Wells Fargo worked with the McCaigs to fix them before this lawsuit was filed.  This is the opposite of an intent to defraud, mislead, or deceive.

The McCaigs' claim under Section 392.304(a)(12) also failed as a matter of law.  Not only was there no evidence of intent, the McCaigs offered no evidence that Wells Fargo threatened to charge unauthorized fees to the McCaigs, as would be required to prove a claim under Section 392.304(a)(12).

### 4.     The McCaigs' Claims Are Barred by the Economic Loss Rule

The McCaigs' TDCA claims are also barred by the economic loss rule.  The McCaigs argue three points in response:  (a) the economic loss rule allegedly does not apply to TDCA claims, (b) applying the rule would allegedly undermine the policies of the TDCA, and (c) the economic loss rule should not apply to the facts of the McCaigs' claims.  (*See* Appellees' Brief at 15-18).  The Court should reject each of those points.

The McCaigs cite no case addressing whether the economic loss rule applies under the TDCA.  Instead, they focus on authority addressing the Texas Deceptive Trade Practices Act ("DTPA"), but they ignore the Texas Supreme Court's authority refusing to extend liability under that statute to mere breaches of contract. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996); *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983).  Instead of addressing the controlling authority, the McCaigs rely on a single case—*SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534 (Tex. App.—Eastland 2012, no pet.)— which is not on point.  *SCS Builders* does not address DTPA liability based on a mere breach of contract; it addresses liability based on fraudulent and unconscionable conduct to induce another to enter into the contract.  Fraudulent inducement claims are a well-recognized exception to the economic loss doctrine.

9

*See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). However, the McCaigs' claims are not based on allegations of fraud in the inducement.

Applying the economic loss rule does not undermine the TDCA's purposes. On page 16, the McCaigs argue the TDCA would be undermined "[i]f the mere presence of a contract within a fact pattern that establishes a violation of the statute would bar suit under that statute." The McCaigs miss the point. Wells Fargo has never argued that the mere presence of a contract bars the TDCA claim. Instead, Wells Fargo's position is that, to prove a TDCA violation, the McCaigs needed to do more than just prove (or allege) a breach of contract. The majority of courts to address the issue agree with Wells Fargo that a breach of contract, by itself, is not a TDCA violation. (*See* Appellant's Brief at 22-26) (citing cases).

Finally, the McCaigs are wrong when they argue that the facts of this case do not justify application of the economic loss rule. The McCaigs' claims are based on nothing more than an alleged breach of contract. The McCaigs provide no answer to the numerous federal district court decisions rejecting TDCA claims under similar factual circumstances. (*See* Appellant's Brief at 24).

## C.    THE MCCAIGS LACK STANDING TO SUE UNDER THE TDCA

Wells Fargo explained why the McCaigs lacked standing to sue under the TDCA. (*See* Appellant's Brief at 33-37). The McCaigs' response does not address Wells Fargo's argument. Instead, it raises three points that miss the mark.

First, the McCaigs argue they have standing due to Wells Fargo's alleged violation of the Forbearance Agreement. (*See* Appellees' Brief at 19-20). But they cite no authority to show that the TDCA was intended to penalize a mere breach of contract. The better rule is that a TDCA plaintiff must have been the target of unlawful debt collection activity as defined in the statute in order to have standing to sue. *See Lee v. Wells Fargo Bank, N.A.*, 2013 WL 754043, *8 (S.D. Tex. Feb. 27, 2012). This rule is consistent with the Supreme Court's standing jurisprudence—requiring the plaintiff to prove some actual or threatened injury from the putatively illegal conduct." *See Warth v. Seldin*, 422 U.S. 490, 499-501 (1975). Under that standard, Mrs. McCaig lacks standing because she was not the target of any communications from Wells Fargo, and she owned no interest in the property at issue. Mr. McCaig likewise lacked standing because, as he freely admitted, Wells Fargo never attempted to collect a debt from him personally. *See* ROA.5335.

Second, even if they could prove some debt collection activities directed to them personally, the McCaigs are not "consumers" authorized to sue under the TDCA. Merely signing the Forbearance Agreement did not qualify them as consumers. A "consumer" means "an individual who has a consumer debt." TEX. FIN. CODE §392.001(1). Although Allie had a consumer debt under her Note, the Forbearance Agreement provides the McCaigs are not personally liable for that debt. (PX1-3). Moreover, although the Forbearance Agreement gave the McCaigs the opportunity to cure the default on Allie's loan, the Forbearance Agreement did not require the McCaigs to make any payments. They could have walked away at any time. Because the McCaigs had no "obligation" to make payment under either the Note or the Forbearance Agreement, they did not have a consumer debt (as defined under TEX. FIN. CODE §392.001(2)). Accordingly, they are not "consumers" authorized to sue under the TDCA.

Finally, the McCaigs do not have standing as "the heirs of Allie Vida McCaig." (*See* Appellees' Brief at 21). The McCaigs went to trial on their *individual* claims against Wells Fargo. No claims were submitted to the jury for

12

the McCaigs in a representational capacity. *See* ROA.3830-ROA.3839. It is too late for the McCaigs to change their theory of recovery on appeal.[5]

### D.    THE AWARD OF MENTAL ANGUISH DAMAGES SHOULD BE REVERSED

Wells Fargo explained why the award of mental anguish damages should be reversed. (*See* Appellant's Brief at 33-45). The McCaigs did not respond to Wells Fargo's showing that there was no evidence of actual damages. (*See* Appellant's Brief at 45-47). They also did not respond to the authority refusing to award recovery for mental anguish in property cases. (*See* Appellant's Brief at 42-43). Instead, the McCaigs' response only addresses the "mental anguish" jury instruction and Dr. Rios' testimony.

First, the McCaigs are wrong when they argue that the language Wells Fargo requested for the jury charge "goes to evidentiary arguments about the amount of mental anguish." (*See* Appellees' Brief at 24). Wells Fargo requested instructions on the law addressing (a) when mental anguish may be recovered and (b) a

---

[5]    The McCaigs' substantive arguments on representational standing are also wrong. For example, the words "alleged debt" in the TDCA would not be "surplusage" if heirs were not granted representational standing under the TDCA. (*See* Appellees' Brief at 21-22). The reason the words "alleged debt" are used is because, in many debt collection cases, the actual, living consumer disputes owing the debt. Moreover, representational standing is not needed to address concerns regarding "notice to the property owner." The TDCA addresses debt collection; it is not the statute that governs foreclosures. Texas already has a statute that expressly addresses who is entitled to notice before foreclosure. *See* TEX. PROP. CODE §51.002(b). Notice requirements are also addressed in the underlying loan documents. *See* DX1 at ¶8; DX2 at ¶18. The TDCA does not change or expand the notice requirements.

category of alleged anguish that is not recoverable as a matter of law. *See* ROA.3851. In effect, the McCaigs now argue that the parties should have been allowed to argue the law to the jury, instead of having the Court instruct the jury on what is needed to prove recoverable mental anguish. This defeats the purpose of providing instructions to the jury.

The McCaigs are also wrong on the merits. The McCaigs' mental anguish theory depended significantly on the allegations that (a) David McCaig suffered chest pains due to Wells Fargo's conduct and (b) as a result, Marilyn McCaig was afraid her husband would die. (*See* Appellees' Brief at 26-27). The McCaigs do not deny that Texas law requires expert testimony to draw a causal link between conduct and alleged medical conditions such as chest pain. (*See* Appellant's Brief at 39-42). The McCaigs offered no response to Wells Fargo's objection that Mrs. McCaig—a lay witness—was unqualified to offer an opinion on the cause of Mr. McCaigs' alleged chest pain. (*See* Appellant's Brief at 41). Moreover, the district court expressly prohibited Dr. Rios from testifying on the issue of causation of Mr. McCaigs' alleged chest pains because Dr. Rios had never treated McCaig and was not qualified to offer an opinion on the subject. ROA.4254-ROA.4257.

Accordingly, the McCaigs offered no competent evidence to support their theories of mental anguish.[6]

## E.     WELLS FARGO IS NOT LIABLE UNDER QUESTION 6

In their brief, the McCaigs never state exactly which communications they were relying upon to try to prove their claim under Question 6 for "represent[ing] to any person other than the consumer that the consumer is willfully refusing to pay a non-disputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." ROA.3836. Based on the arguments presented, however, it appears they are basing this claim on PX29-32— Wells Fargo's communication to the Texas Attorney General's Office (the "AG").[7] (*See* Appellees' Brief at 27-29).

---

[6]     On page 27, the McCaigs argue (without a supporting record cite) that Dr. Rios placed "foreclosure threats" in the "range of 'mental anguish'" on the Holmes-Rahe Scale. Contrary to the McCaigs' argument, Dr. Rios admitted a foreclosure threat was only a relatively moderate stress under the scale. ROA.5179-ROA.5180, ROA.5194-ROA.5196. The McCaigs also do not account for the fact that they did not even live in the property at the time of the alleged threat to foreclose, which Dr. Rios acknowledged was an assumption underlying the level of stress assigned to foreclose under the Holmes-Rahe Scale. ROA.5196.

[7]     Although Wells Fargo addressed other communications in its opening brief, the McCaigs did not brief arguments relating to any other potential third-party communications. (*See* Appellant's Brief at 48-50). On page 5 of their brief, the McCaigs' make a passing reference to "automated misrepresentations" allegedly made "to the Department of HUD," but none of the evidence cited by the McCaigs supports this statement. (*See* Appellees' Brief at 5). The pages from the record cited by the McCaigs do not address HUD. Moreover, the McCaigs never told the jury or the district court that they were basing their claim under Question 6 on statements allegedly made to HUD.

The McCaigs never try to connect the evidence to the elements of this claim under TEX. FIN. CODE §393.301(a)(3).  Wells Fargo's communication to the AG is not actionable for the simple reason that it was the discussion of a dispute, and not a representation the McCaigs were "willfully refusing to pay a *non-disputed* consumer debt."  ROA.3836 (emphasis added).  Instead of addressing the elements of the claim, the McCaigs argue about whether Wells Fargo's response was accurate.  But that discussion is irrelevant to the claim asserted under Question 6.[8]

## F.    THE AMOUNT OF DAMAGES AWARDED WAS EXCESSIVE

The district court's damage award should also be reversed because it was excessive.  (*See* Appellant's Brief at 50-58).  The McCaigs do not cite a single Texas case that approves an award of damages for a wrongful attempted foreclosure.  This is reason in itself to reverse the district court's judgment.  *See Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) ("[w]here the mortgagor's possession is undisturbed, he has suffered no compensable damage.").  Because the determination of whether damages may be recovered on a particular type of claim is a question of law, this Court reviews this

---

[8]    In its opening brief, Wells Fargo provided an example of the type of third-party communications that could be covered under Section 393.301(a)(3).  (*See* Appellant's Brief at 48) ("such as communications to credit bureaus").  Contrary to the McCaigs' argument, Wells Fargo never contended "that 'any person other than the consumer' only means credit bureaus."  (*See* Appellees' Brief at 29).

point *de novo*. *See Munn v. Algee*, 924 F.2d 568, 575-76 (5th Cir. 1991) ("Because the availability of damages is a question of law, we do not afford the district court's decision any deference.") (citing *Dixon v. International Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985) (citations omitted)).

But even if damages could be recovered for a wrongful attempted foreclosure, the damages awarded here were excessive. To evaluate whether the award is excessive, the Court should compare the judgment here to judgments in comparable cases. *See Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). The McCaigs' attempt to defend the damage award fails because they are not comparing their verdict to any comparable case. The McCaigs rely on two Texas cases that have nothing to do with foreclosures, attempted foreclosures, any TDCA violations, or the types of conduct at issue here (*i.e.* the receipt of mistaken notices of default). (*See* Appellees' Brief at 32) (citing *First Valley Bank of Los Fresnos v. Martin*, 55 S.W.3d 172 (Tex. App.—Corpus Christi 2001), *rev'd,* 144 S.W.3d 466 (Tex. 2004) (addressing damages arising from a claim of fraud and malicious prosecution after the plaintiff was accused of committing a crime), and *Bunton v. Bently*, 153 S.W.3d 50 (Tex. 2004) (addressing damages in a defamation case against co-hosts of a call-in television talk-show)). They also cite several internet sites reporting anecdotal stories of alleged recoveries in cases without

17

giving any information to confirm whether the verdict is real, what the facts were, or whether it even involved a claim in Texas or under Texas law. (*See* Appellees' Brief at 32-33). The McCaigs cite no authority that supports consideration of these online sources in the analysis. Indeed, the McCaigs did not even cite these sources in the district court when responding to Wells Fargo's challenge to the judgment.

Wells Fargo has already cited multiple cases involving foreclosure allegations and TDCA claims, all of which resulted in mental anguish awards significantly less than what was awarded in this case, despite having much more egregious conduct. (Appellant's Brief at 50-54). This Court should decline the McCaigs' invitation to affirm the damage award when comparable cases show that the award is excessive.

## G.    THE MCCAIGS CANNOT RECOVER FOR BREACH OF CONTRACT

The McCaigs cannot avoid reversal of the judgment by seeking recovery on their alternative breach of contract claims. Wells Fargo did not breach its contract with the McCaigs. (*See* Appellant's Brief at 58-59). The McCaigs still have not identified a specific provision in the Forbearance Agreement that was breached. Regardless, the McCaigs offered no evidence of damages caused by any alleged breach of contract. The expenses they incurred were not tied to a breach. (*See* Appellant's Brief at 58 n.17). Moreover, mental anguish damages are not

recoverable on a breach of contract claim. *See Doe v. SmithKline Beechum Corp.*, 855 S.W.2d 248, 258 (Tex. App.—Austin 1993), *aff'd*, 903 S.W.2d 347 (Tex. 1995). Because they have no evidence to prove damages resulting from a breach of contract, the McCaigs are also precluded from recovering attorneys' fees. *See Ashford Partners Ltd. v. ECO Resources, Inc.*, 401 S.W.3d 35, 40-41 (Tex. 2012).

## H. CONCLUSION

The judgment of the district court should be reversed, and judgment should be rendered in Wells Fargo's favor. Alternatively, Wells Fargo should be awarded a new trial.

Respectfully submitted,

/s/ W. Scott Hastings
W. Scott Hastings
shastings@lockelord.com
Kurt M. Wolber
kwolber@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 (fax)

**COUNSEL FOR APPELLANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2014, I filed Appellant's Reply Brief through the Fifth Circuit's CM/ECF filing system, which will send notice of such filing to the counsel of record who have filed Appearances of Counsel forms with the Court in this matter. In addition, hard copies of Appellant's Brief have been sent by first class, United States mail to the following counsel of record:

Savannah Lina Robinson
1822 Main Street
Danbury, Texas 77534-0000

/s/W. Scott Hastings
W. Scott Hastings

## ECF CERTIFICATION

Counsel for Appellant certifies that (i) all required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; 2; (ii) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; (iii) this electronic document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses; and (iv) the original paper document was signed by the attorney of record and will be maintained for a period of three years after mandate or order closing the case issues, pursuant to 5th Cir. R. 25.2.9.

/s/ W. Scott Hastings
W. Scott Hastings

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,378 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font in the text and 12-point font in the footnotes.

/s/ W. Scott Hastings
W. Scott Hastings

August 29, 2014

23